1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11   IRMA BARBOSA and CECELIA MATA,           No.  2:20-cv-01096-TLN-KJN
     on behalf of themselves and those similarly
12   situated,

13                 Plaintiffs,                 **ORDER**

14          v.

15   DELTA PACKING COMPANY OF
     LODI, INC. AKA "DELTA FRESH";
16   SALINAS FARM LABOR
     CONTRACTOR, INC.; ERNIE
17   COSTAMAGNA, an individual,
     ANNAMARIE COSTAMAGNA, and
18   individual, and DOES 1–20

19                 Defendants.

20

21          This matter is before the Court on Plaintiffs Irma Barbosa ("Barbosa") and Cecelia Mata's

22   ("Mata") (collectively, "Plaintiffs") Motion for Class Certification.  (ECF No. 41.)  Defendants

23   Delta Packaging of Lodi, Inc. ("Delta"), Salinas Farm Labor Contractor, Inc. ("Salinas"), Ernie

24   Costamagna, Annmarie Costamagna, and Does 1–20 (collectively, "Defendants") filed an

25   opposition.  (ECF Nos. 46, 50.)  Plaintiffs filed a reply.  (ECF No. 51.)  For the reasons set forth

26   below, the Court GRANTS in part and DENIES in part Plaintiffs' motion.

27   ///

28   ///

                                            1

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs allege they were previously employed by Salinas and worked at Delta's packaging plant in Lodi, California as agricultural workers.  (ECF No. 41-1 at 2.)  Salinas is a labor contractor and provides general laborers to Delta during their cherry packing season.  (ECF No. 50 at 6.)  Barbosa claims she worked for Defendants for nine seasons, 2009 through 2018, in various positions but most recently as a sorter.  (ECF No. 41-3 at 2.)  Mata claims she worked for Defendants for one season, in 2016, as a sorter.  (ECF No. 41-4 at 2.)

Plaintiffs allege several of Defendants' wage and hour policies violated California law by not compensating employees for all hours worked.  (ECF No. 41-1 at 1–2.)  Specifically, Plaintiffs allege Defendants automatically deducted thirty-minutes from their timecard's meal breaks, even though Defendants routinely denied employees timely meal breaks or did not provide employees with full thirty-minute meal breaks.  (*Id*. at 3.)  Plaintiffs also allege Defendants required employees to work during mandatory rest breaks.  (*Id*. at 1.)  Finally, Plaintiffs allege Defendants required employees to don and doff protective gear and complete other work-related tasks while off-the-clock.  (*Id*. at 2.)

On May 29, 2020, Plaintiffs filed a class action suit against Defendants alleging eight causes of action: (1) violation of the Fair Labor Standards Act; (2) failure to pay minimum wages; (3) failure to pay overtime wages; (4) failure to provide timely and complete meal periods or pay additional wages in lieu thereof; (5) failure to provide rest periods or pay additional wages in lieu thereof; (6) failure to pay wages of terminated or resigned employees; (7) knowing and intentional failure to comply with itemized employee wage statement provisions; and (8) violation of California's Unfair Competition Law.  (ECF No. 1.)

Plaintiffs filed the instant motion to certify class on September 19, 2022.  (ECF No. 41.)  Plaintiffs seek to certify three classes pursuant to Federal Rule of Civil Procedure ("Rule") 23.  (ECF No. 41-1 at 1–2.)  Plaintiffs' putative "Class 1," labeled the "Auto-Deduction Class" includes "[a]ll non-exempt individuals who are or have been employed by Defendants at the Delta Packing Company of Lodi, Inc. (aka 'Delta Fresh') packing plant in Lodi, California at any time since May 29, 2016, whose time records show auto-deducted 30-minute meal periods."  (*Id*.

2

at 1.)  Plaintiffs' putative "Class 2," labeled the "Rest Break Class" includes "[a]ll non-exempt individuals who are or have been employed by Defendants at the Delta Packing Company of Lodi, Inc. (aka 'Delta Fresh') packing plant in Lodi, California at any time since May 29, 2016, who were subject to policies requiring work during rest periods."  (*Id*. at 1–2.)  Plaintiffs' putative "Class 3," labeled the "Unpaid Minimum Wage Class" includes "[a]ll non-exempt individuals who are or have been employed by Defendants at the Delta Packing Company of Lodi, Inc. (aka 'Delta Fresh') packing plat in Lodi, California at any time since May 29, 2016, who were required to don and doff and complete other work tasks off-the-clock."  (*Id*. at 2.)

## II.    STANDARD OF LAW

Class certification is governed by Rule 23.  "Parties seeking class certification bear the burden of demonstrating that they have met each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b)."  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979–80 (9th Cir. 2011) (citing *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001), *amended by* 273 F.3d 1266 (9th Cir. 2001)).

Under Rule 23(a), the party seeking certification must establish: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of representative parties are typical of the claims or defenses of the class; (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).  "These requirements effectively 'limit the class claims to those fairly encompassed by the named plaintiff's claims.'"  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982) (quoting *Gen. Tel. Co. of the Nw. v. Equal Employ. Opp. Comm'n*, 446 U.S. 318, 330 (1980)).

Plaintiffs rely on Rule 23(b)(3) of the Rule 23(b) requirements.  (ECF No. 100 at 10.)  Under Rule 23(b)(3), "[a] class action may be maintained if: . . . (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and effectively adjudicating the controversy."  Fed. R. Civ. P. 23(b).

///

3

1    **III.    ANALYSIS**

2              A.    Rule 23(a)

3                    i.    *Numerosity*

4          The first Rule 23(a) prerequisite is numerosity.  Fed. R. Civ. P. 23(a)(1).  To meet the

5    numerosity requirement, the class must be "so numerous that joinder of all members is

6    impracticable."  *Id*.  Numerosity does not impose a precise numerical threshold.  *Gen. Tel. Co. of*

7    *the Nw.*, 446 U.S. at 330.  However, "[c]ourts have routinely found the numerosity requirement

8    satisfied when the class comprises 40 or more members."  *E.E.O.C. v. Kovacevich "5" Farms*,

9    No. 06-165, 2007 WL 1174444, at *21 (E.D. Cal. Apr. 19, 2007).

10         In the instant case, Plaintiffs allege there are approximately 2,700 putative class members

11   in the three proposed classes.  (ECF No. 41-1 at 7.)  Defendants contend "the Court cannot make

12   a finding that any of the three proposed classes are sufficiently numerous on the record before it."

13   (ECF No. 46 at 10.)

14         A plaintiff must present evidence to satisfy the numerosity requirement.  *See Wal-Mart*

15   *Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("A party seeking class certification must

16   affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove

17   that there are in fact sufficiently numerous parties ....").  A "failure to present evidence to show

18   numerosity precludes class certification."  *Diacakis v. Comcast Corp.*, No. C 11-3002 SBA, 2013

19   WL 1878921 (N.D. Cal. May 3, 2013).

20         First, Plaintiffs contend there is sufficient evidence to certify approximately 2,700

21   members of the Auto-Deduction Class.  Specifically, Plaintiffs' expert, Aaron Woolfson, declared

22   of the 2,754 employees involved in the case "almost every employee experienced one or more

23   shifts that were subject to auto-deletion" for a meal break, but the time and duration of the meal

24   break was not recorded.  (ECF No. 41-15 at 9.)  Defendants contend this evidence is insufficient

25   to prove numerosity and argue "Plaintiffs would need to present evidence regarding the number

26   of putative class members who were provided meal periods of less than thirty minutes."  (ECF

27   No. 46 at 10.)  The Court disagrees.  As discussed below, the lack of recorded meal breaks in

28   Defendants' records creates a rebuttable presumption that employees did not receive a meal-

4

1    break.  Therefore, the Court finds the Auto-Deduction Class is sufficiently numerous because the

2    record shows at least 2,754 employees experienced at least one shift with an unlawful meal break.

3        Next, Plaintiffs contend the numerosity requirement is satisfied for the Rest Break Class

4    and Unpaid Minimum Wage Class based upon the fact Defendants employed over 2,700 people

5    during the class period.  (ECF No. 41-1 at 7.)  However, this fact alone is insufficient to show

6    numerosity.  Plaintiffs offer no evidence regarding how many of these employees were required

7    to work during rest periods or don and doff and complete other work-related tasks off-the-clock.

8    While some declarants in support of Plaintiffs' motion report having to put on protective gear

9    prior to clocking-in or seeing employees work during meal and rest breaks (ECF Nos. 41-3–41-

10   4;41-8–41-15), this evidence is alone insufficient to show how many of the approximately 2,700

11   employees fall into the Unpaid Minimum Wage Class or Rest Break Class.  *See, e.g., Siles v.*

12   *ILGWU Nat. Retirement Fund*, 783 F.2d 923, 930 (9th Cir.1986) (affirming denial of certification

13   of class consisting of members of plan who were denied benefits where plaintiff presented no

14   evidence as to how many of the 31,000 plan members were denied benefits in circumstances like

15   the plaintiff).

16       Accordingly, the Court finds Plaintiffs satisfy the numerosity requirement for the Auto-

17   Deduction Class but not the Rest Break or Unpaid Minimum Wage Class.  Because Plaintiffs did

18   not satisfy the numerosity requirement for the Rest Break and Unpaid Minimum Wage Class, the

19   Court does not certify these classes.

20                               *ii.    Commonality*

21       The second Rule 23(a) prerequisite is commonality.  Fed. R. Civ. P. 23(a)(2).  There must

22   be "questions of law or fact that are common to the class."  *Id*.  Commonality exists when class

23   members' claims depend upon a common question that is "capable of classwide resolution—

24   which means that determination of its truth or falsity will resolve an issue that is central to the

25   validity of each one of the claims in one stroke."  *Dukes*, 564 U.S. at 350.  Further, the "rigorous

26   analysis" under Rule 23(a) "sometimes [requires] the court to probe behind the pleadings before

27   coming to rest on the certification question."  *Id*. at 350–51.  "[T]he merits of the class members'

28   substantive claims are often highly relevant when determining whether to certify a class," and "a

5

district court must consider the merits" if they overlap with Rule 23(a)'s requirements. *Ellis*, 657

F.3d at 981.  As such, a court must resolve any factual disputes "to determine whether there was a

common pattern and practice that could affect the class as a whole." *Id*. at 983 (emphasis

original); *see also Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013).

Plaintiffs argue common questions of law and fact exist as to whether Defendants' meal-

break practices give rise to liability for the Auto-Deduction Class.  (ECF No. 41-1 at 7–10.)

Under California law, employers are required to accurately record when each employee begins

and ends each work period, as well as meal periods.  Wage Order 1-2001, § 7(A)(3).  Plaintiffs

allege "none of the time records produced by Defendants show recorded meal periods for any

class member" which raises "a common question of whether Defendants' policy gives rise to

liability for meal period violations."  (ECF No. 41-1 at 7.)  In support, Plaintiffs rely on *Donohue

v. AMN Servs.*, 11 Cal. 5th 58 (2021), in which the California Supreme Court held, "[i]f an

employer's records show no meal period for a given shift over five hours, a rebuttable

presumption arises that the employee was not relieved of duty and no meal was provided." *Id*. at

74.  The *Donohue* Court observed that the rebuttable presumption derives from an employer's

duty to maintain accurate records of meal periods. *Id*. at 76; Wage Order No. 4, § 7(A)(3)

("Every employer shall keep accurate information with respect to each employee including . . .

time records showing when the employee begins and ends each work period . . .. Meal periods . . .

shall also be recorded.").

Plaintiffs assert the *Donohue* presumption applies because Defendants had a uniform

policy of failing to keep accurate records of meal periods and automatically deducting thirty

minutes from class members' timecards.  (ECF No. 41-1 at 7–10.)  Specifically, Plaintiffs' expert,

Aaron Woolfson, states "out of the 2,754 employees' time clock data that [he] analyzed,

approximately 82% of all shifts indicated an auto-deduction" where "the shift was greater than

five (5) hours and there was otherwise not an entry indicating the time, and duration, of a meal."

(ECF No. 41-15 at 9.)  Thus, Plaintiffs argue they can prove liability on a class wide basis

through time record analysis pursuant to *Donohue*.  (ECF No. 51 at 3.)

///

1    In opposition, Defendants assert the *Donohue* presumption is inapplicable because

2    Defendants shut down the entire packaging line during meal breaks and thus were not required to

3    record meal periods under Wage Order 13.  (ECF No. 46 at 12; ECF No. 50 at 16); *see* Wage

4    Order 1-2001, § 7(A)(3) ("Meal periods during which operations cease and authorized rest

5    periods need not be recorded.").  In support, Defendants offer declarations from four supervisors

6    who assert operations ceased for forty to forty-five minutes during every meal period.  (*See* ECF

7    No. 46-1.)  Defendants argue this evidence rebuts Plaintiffs' presumption, which means "the

8    Court is [ultimately] left with individualized inquiries into the alleged reasons for class members'

9    failure to take their timely meal periods."  (ECF No. 50 at 16.)

10    In reply, Plaintiffs assert this exception to Wage Order 13 is inapplicable because

11    Defendants failed to consistently cease operations for the entire production line before the fifth

12    hour of work and for a full thirty minutes.  (ECF No. 51 at 6.)  Plaintiffs offer declarations from

13    nine employees who testified that they consistently worked more than five hours before being

14    given a lunch break, which would typically only last twenty to twenty-five minutes.  (*See* ECF

15    Nos. 41-3–41-4; 41-8–41-15.)

16    Moreover, Defendants own expert asserts at least 22% of employees experience a shift

17    with a meal break violation, that is, either an unrecorded meal break or a meal break less than

18    thirty minutes in length.  (ECF No. 46-1 at 31.)  Even taking Defendants' lower estimate as true,

19    it is ultimately sufficient to invoke the *Donohue* presumption.  *See Garcia v. Cent. Coast*

20    *Restaurants, Inc.*, No. 18-CV-02370-RS, 2022 WL 657972 at *6 (N.D. Cal. Mar. 4, 2022)

21    ("[T]hat records show 17% of shifts show a possible meal period violation is sufficient to invoke

22    the presumption from *Donohue*").

23    Accordingly, the Court concludes there are common class-wide questions regarding

24    Defendants' liability to the Auto-Deduction Class.  Plaintiffs' declarations and time record

25    analysis by both Plaintiffs and Defendants' experts creates a rebuttable presumption that

26    Defendants are liable for non-compliant meal periods under California law.  Additionally, the

27    viability of the defense that Defendants were excused from recording meal breaks under Wage

28    Order 1-2001, § 7(A)(3) is subject to class-wide resolution because the evidence is common to all

1    class members as to whether, in fact, Defendants did cease production during the mandated thirty-

2    minute meal break.

3         Thus, the Court finds Plaintiffs meet the commonality requirements for the Auto-

4    Deduction Class.

5                                  *iii.   Typicality*

6         The third Rule 23(a) prerequisite is typicality.  Fed. R. Civ. P. 23(a)(3).  The

7    representative plaintiff's claims must be "typical of the claims . . . of the class."  *Id*.  The purpose

8    of the typicality requirement is to ensure that the representative plaintiff and the class members'

9    interests are aligned.  *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir.

10   2010).  "Under [Rule 23(a)'s] permissive standards, representative claims are 'typical' if they are

11   reasonably co-extensive with those of absent class members; they need not be substantially

12   identical."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).  "The test of

13   typicality is whether other members have the same or similar injury, whether the action is based

14   on conduct which is not unique to the named plaintiffs, and whether other class members have

15   been injured by the same course of conduct."  *Ellis*, 657 F.3d at 984 (internal citation omitted).

16        Plaintiffs contend typicality is satisfied because "Plaintiffs suffered the same meal period

17   violations as the proposed class members and therefore their interest in remedying these

18   violations aligns with the Class."  (ECF No. 41-1 at 10.)  Defendants generally argue Plaintiffs'

19   claims are not typical because "they have failed to demonstrate that claims are the same among

20   all three packing sheds or job positions at issue."  (ECF No. 46 at 16.)

21        However, Defendants offer no evidence that contradicts Plaintiffs' assertion or supports

22   their own assertion that Plaintiffs' claims are unrepresentative of what employees experienced in

23   other packing sheds or job positions.  Absent evidence of inconsistencies between class members,

24   there is no indication Plaintiffs' claims are unique in any way.  *Kurihara v. Best Buy Co.*, No. C

25   06-01884 MHP, 2007 WL 2501698 at *7 (N.D. Cal. Aug. 30, 2007) ("For the purposes of the

26   typicality requirement, it is sufficient that plaintiff ... has asserted that all Best Buy employees are

27   subject to the challenged practice and procedure.").

28   ///

1    Accordingly, the Court finds that Plaintiffs have satisfied Rule 23(a)'s typicality

2    requirement for the Auto-Deduction Class.

3                    *iv.  Adequate Representatives*

4    The final Rule 23(a) prerequisite is adequacy of representation.  Fed. R. Civ. P. 23(a)(4).

5    "[T]he representative parties [must] fairly and adequately protect the interests of the class."  *Id.*

6    In determining whether that requirement is met, the Court asks two questions: (1) do the

7    representative plaintiff and his counsel have any conflicts of interest with other class members;

8    and (2) will the representative plaintiff and his counsel prosecute the action vigorously on behalf

9    of the class?  *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (citing *Hanlon*, 150 F.3d at

10   1020).

11   Defendants argue Barbosa has a conflict of interest with other class members because she

12   was a floor person, and as such was in a supervisory role where she could have contributed to the

13   alleged violations in Plaintiffs' claims.  (ECF No. 46 at 16; ECF No. 50 at 23.)  Defendants offer

14   no evidence as to what supervisory responsibilities Barbosa had as a floor person other than the

15   conclusory declaration from Ms. Cazarez that a "floor person" is "considered a supervisor."

16   (ECF No. 46-1 at 2.)  Moreover, Defendants offer no evidence as to whether Barbosa had control

17   over scheduling meal breaks or ceasing production to allow employees to take meal breaks.

18   Rather, Ms. Cazarez declared, "[f]loor persons do not control when the packing lines start and

19   stop."  (ECF No. 46-1 at 3.)  Thus, the Court finds Barbosa's role as a floor person does not

20   present a conflict of interest.

21   Additionally, Salinas challenges Plaintiffs' ability to prosecute this case based upon vague

22   reference to their prosecution of a pending state age discrimination case against Defendants.

23   (ECF No. 50 at 24.)  In support, Defendants argue "Plaintiffs and counsel may be less willing to

24   vigorously pursue this action when they know they have another means of punishing

25   Defendants."  (*Id.*)  However, the Court finds Defendants' vague, unfounded claims are

26   insufficient to defeat class certification.

27   Accordingly, the Court finds Plaintiffs meet Rule 23(a)'s adequacy requirement.

28   ///

9

1          B.      Rule 23(b)

2                  i.      *Predominance*

3          Under Rule 23(b)(3), common questions of law and fact must predominate over individual

4   questions.  Fed. R. Civ. P. 23(b)(3).  The predominance inquiry assesses whether the proposed

5   class is "sufficiently cohesive to warrant adjudication by representation."  *Amchem Prod., Inc. v.*

6   *Windsor*, 521 U.S. 591, 623 (1997).  "This analysis presumes that the existence of common issues

7   of fact or law has been established pursuant to Rule 23(a)(2)," but it goes a step further and

8   focuses on the relationship between common and individual issues.  *Hanlon*, 150 F.3d at 1022.

9   "When common questions present a significant aspect of the case and they can be resolved for all

10  members of the class in a single adjudication, there is clear justification for handling the dispute

11  on a representative rather than on an individual basis."  *Id*. (citation omitted).

12         Plaintiffs argue "the common question of whether Defendants' uniform failure to record

13  meal periods for the entire class was legal predominates over question as to whether any

14  individual class members suffered meal break violations."  (ECF No. 41-1 at 11.)  Salinas

15  disagrees and argues determinations into whether the production line was shut down and

16  employees received a thirty-minute meal break during the class period will require "an

17  individualized look at each employee's time records and a detailed inquiry into each purported

18  class members' meal period practices."  (ECF No. 50 at 18.)

19         The Court agrees with Plaintiffs.  Defendants' liability will be determined based upon

20  whether Defendants adopted a uniform policy which violates California wage and hour laws, not

21  whether individual employees received a thirty-minute meal break.  Whether an employee

22  received a thirty-minute meal break during a given shift goes to damages, not liability, and

23  individual damage calculations cannot defeat class certification.  *Yokoyama v. Midland Nat. Life*

24  *Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010); *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir.

25  1975) ("The amount of damages is invariably an individual question and does not defeat class

26  action treatment.").

27  ///

28  ///

1   In the instant case, common questions required by Rule 23(a)(2) predominate over any

2   purported individual issues.  These common questions include whether Defendants had a policy

3   of providing class members with thirty-minute meal breaks as required under California law,

4   whether Defendants can demonstrate that it ceased production to provide employees with these

5   required meal breaks, and if not, whether Defendants can demonstrate they properly recorded

6   thirty-minute meal breaks for class members throughout the entire class period.[1]

7   Accordingly, the Court finds Plaintiffs have met the predominance requirement for the

8   Auto-Deduction Class.

9   *ii.*      *Superiority*

10   Finally, a Rule 23(b)(3) class action must be "superior to other available methods for

11   fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  If there are no

12   viable alternatives to a class action, the class action method is necessarily superior.  *Loc. Joint*

13   *Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir.

14   2001).

15   Plaintiffs assert superiority is satisfied because "class action is superior to the only other

16   available method, which would be a multitude of thousands of individual lawsuits."  (ECF No.

17   41-1 at 12.)  Defendants contend the Court should consider the viability of Plaintiffs' trial plan in

18   determining whether class certification is appropriate.  The Court disagrees.  Nothing in Rule 23

19   requires Plaintiffs to submit a formal trial plan with a motion for class certification.  *See*

20   *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 961 n. 4 (9th Cir. 2005) ("Nothing in the Advisory

21   Committee Notes suggests grafting a requirement for a trial plan onto the rule.").  Moreover,

22   Plaintiffs have submitted a viable method for managing this case as a class action.  As noted

23   above, common proof can be used to determine Defendants' liability.

24

25   [1]      The Court acknowledges that in 2019 Defendants began keeping a meal tracking log in
addition to ceasing operations during meal breaks.  (ECF No. 50 at 18.)  Salinas argues "because

26   the meal logs were implemented in 2019, there is a lack of predominance in the purported class
which reaches back to May 29, 2016."  *Id.*  However, as Defendants make clear, Defendants

27   began keeping a meal log in addition to ceasing operations during meal breaks.  *Id.*  Thus, the
implementation of the meal log does not constitute a change in company procedures over the

28   course of the class period which would defeat predominance.

1    Thus, the Court finds that certifying the class is superior to, and more manageable than,

2    any other procedure available for the treatment of factual and legal issues raised by Plaintiffs'

3    claims.

4    **IV.    CONCLUSION**

5    For the foregoing reasons, the Court GRANTS Plaintiffs' motion for class certification

6    (ECF No. 41) as to the Auto-Deduction Class but DENIES Plaintiffs' motion as to the Rest Break

7    Class and Unpaid Minimum Wage Class. The parties are ORDERED to file a Joint Status Report

8    within thirty (30) days of the electronic filing date of this Order, detailing proposed dates for a

9    supplemental scheduling order.

10   IT IS SO ORDERED.

11   Date:  August 14, 2023

12

13

14   _____

15   Troy L. Nunley
     United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28

12